# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KEITH A. MOREL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | )   Case No.: 2:10-cv-02453-MHH |
| v. | ) |
| | ) |
| CHEVRON MINING, INC., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## SUPPLEMENTAL MEMORANDUM OPINION

This case is before the Court on defendant Chevron Mining, Inc.'s motion for summary judgment. (Doc. 20). On March 31, 2015, the Court entered summary judgment in favor of CMI on all of plaintiff Keith Morel's claims except for interference and retaliation under the Family and Medical Leave Act of 1993. (Doc. 38). By separate order, the Court requested additional briefing on Mr. Morel's FMLA claims. (Doc. 39). After careful consideration of the record and the supplemental briefing, the Court enters summary judgment in favor of CMI on Mr. Morel's FMLA claims.

## I.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). For purposes of this supplemental opinion, the Court adopts the facts set out in the Court's initial memorandum opinion. (Doc. 38, pp. 2–12).

## II.   DISCUSSION

### A.   Mr. Morel's FMLA Interference Claim

Mr. Morel asserts that CMI denied him full benefits and rights under the FMLA. (Doc. 1, p. 6). To establish a claim for FMLA interference, Mr. Morel "must demonstrate that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1266–67 (11th Cir. 2008). The FMLA provides that covered employers must provide to eligible

employees 12 workweeks of leave during any 12-month period to allow employees to address serious health conditions. 29 U.S.C. § 2612(a)(1).[1] Following leave, eligible employees also have the right to have their employers restore them to the position that they held when they took FMLA leave. 29 U.S.C. § 2614(a)(1).

Mr. Morel's FMLA interference claim fails because he cannot demonstrate that CMI denied him FMLA leave. In his deposition, Mr. Morel testified that he did not request FMLA leave, and CMI never denied his requests for paid medical leave:

> Q: Did you ever request FMLA leave at any time when you were at North River?
>
> A: No.
>
> Q: Did anybody ever tell you not to take it?
>
> A: No.
>
> Q: Was there any leave – let's just leave FMLA out. Was there any leave that you ever requested that you didn't get?
>
> A: No.

(Doc 21-2, pp. 74–75).

Similarly, Mr. Morel has not demonstrated that CMI refused to reinstate him when he returned from paid medical leave. Mr. Morel admits that before CMI

---

[1] The parties do not dispute that CMI is a covered employer, and Mr. Morel is an eligible employee under the FMLA. *See* 29 U.S.C. §§ 2611(2), (4).

suspended him and later terminated his employment, he returned to the position that he held before he took his last medical leave.

> Q: . . . Do you know when you came back from the second surgery on your arm?
>
> A: It was in - - I think it was in January of '09, and I think it was a couple of days before I was suspended.

(Doc. 21-3, pp. 65–66; Doc. 1, ¶ 28). Therefore, Mr. Morel cannot state a claim for FMLA interference.

The record demonstrates that CMI did not inform Mr. Morel that the medical leave he requested qualified as FMLA leave, as required by 29 C.F.R. § 825.301(b)(1); however, this violation of the FMLA's notice requirements may serve as a basis for an interference claim only if Mr. Morel can show that he was prejudiced by the lack of notice. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89–90 (2002). Mr. Morel has not demonstrated prejudice. CMI gave Mr. Morel all of the leave he requested and reinstated Mr. Morel when he returned from surgery. Mr. Morel contends that he elected to defer treatment in December 2007 for complications which ultimately necessitated his May 2008 surgery and asserts that if CMI had given him notice of his FMLA rights, "he could have taken another possible alternative as to protect his employment situation." (Doc. 44, p. 13). However, Mr. Morel does not explain how notice of his FMLA rights would have impacted his decision to defer treatment, nor does he explain what

4

alternatives he could have taken to protect his employment. Because Mr. Morel cannot establish that CMI denied him a benefit to which he was entitled under the FMLA or that he was prejudiced by CMI's failure to notify him of his FMLA rights, the Court will enter judgment as a matter of law in favor of CMI on Mr. Morel's FMLA interference claim.

### B. Mr. Morel's FMLA Retaliation Claim

To state a claim for FMLA retaliation, Mr. Morel "must show that his employer *intentionally* discriminated against him for exercising an FMLA right." *Martin*, 543 F.3d at 1267 (emphasis in original). Where, as here, there is no direct evidence of retaliatory intent, the Eleventh Circuit applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Martin*, 543 F.3d at 1268. To establish a *prima facie* case of retaliation, an employee "must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Jarvela v. Crete Carrier Corp.*, 754 F.3d 1283, 1289 (11th Cir. 2014) (internal quotation omitted).

If an employee makes a *prima facie* showing of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Giles v. Daytona State College, Inc.*, 542 Fed. Appx. 869, 874 (11th Cir. 2013). If the employer does so, "'the employee must then show that the

employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* (quoting *Martin*, 543 F.3d at 1268).

At the outset, it is not clear that Mr. Morel engaged in statutorily protected activity because Mr. Morel admits that he did not request or take FMLA leave. Even assuming that Mr. Morel could establish a *prima facie* case of retaliation, his claim cannot survive CMI's motion for summary judgment because Mr. Morel cannot demonstrate that CMI's reasons for terminating him are pretext for FMLA retaliation. CMI asserts that it terminated Mr. Morel's employment because he submitted a falsified expense report and because he received the lowest possible performance rating for two consecutive years. (Doc. 20-1, p. 16; Doc. 21-3, pp. 70–71; Doc. 21-4, pp. 3–4, 6–9). These are legitimate, non-retaliatory reasons for terminating Mr. Morel's employment. Therefore, the burden shifts to Mr. Morel to present sufficient evidence to permit a reasonable factfinder to conclude that CMI's proffered reasons for terminating his employment were pretext for FMLA retaliation. Mr. Morel has not met this burden.

Mr. Morel's pretext argument rests on four propositions: (1) that CMI's evaluations of his performance are not accurate; (2) that he did not actually submit a falsified report; (3) that decisionmaker Barry Kimbrell expressed frustration with

6

the amount of medical leave Mr. Morel needed to take; and (4) that CMI stated in its interrogatory responses that Mr. Morel's termination was part of an overall reduction in force. (Doc. 24, pp. 21–23). The Court examines these assertions in order.

First, as to Mr. Morel's contention that CMI's criticisms in his performance evaluations are inaccurate, (Doc. 24, pp. 21–22), Mr. Morel's argument overlooks the fact that "'[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance.'" *Mitchell v. City of LaFayette*, 504 Fed. Appx. 867, 871 (11th Cir. 2013) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997)). Mr. Morel's conviction that his performance was satisfactory is insufficient to establish pretext. *See Holifield*, 115 F.3d at 1565 ("[W]here the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence."). Mr. Morel offers no evidence that establishes that CMI actually believed that his job performance was acceptable, but reported otherwise to retaliate against him.

Second, Mr. Morel asserts that he did not actually submit a falsified expense sheet; instead, he only e-mailed a "screenshot" of the report in question. (Doc. 24, p. 22). Even if Mr. Morel is correct in this assertion, this Court's inquiry "is

limited to whether the employer gave an honest explanation of its behavior. . . . [I]f the employer honestly believed that the employee engaged in misconduct, even if it was mistaken in such a belief, no discrimination exists." *Perry v. Batesville Casket Co., Inc.* 551 Fed. Appx. 987, 990 (11th Cir. 2014) (internal quotations omitted). The e-mail chain between Mr. Morel and Ruben Macias regarding the expense report reflects that Mr. Macias believed Mr. Morel submitted a falsified expense report. (Doc. 21-4, p. 11 ("I reviewed the updated report in TEA and all you did was spread the charges out over three day[s].")). Robert Ray, the CMI human resources supervisor who investigated Mr. Morel's expense report, testified that he concluded as a result of his investigation that Mr. Morel submitted a falsified expense report. (Doc. 21-8, pp. 54–55). Barry Kimbrell, the decisionmaker, also states in his affidavit that he believed that Mr. Morel submitted a falsified expense report. (Doc. 21-9, ¶¶ 6–8). Even if CMI was mistaken about whether Mr. Morel actually submitted the expense report in question, Mr. Morel cannot establish pretext because he has not presented evidence to rebut CMI's evidence of its honest belief that Mr. Morel engaged in misconduct.

Third, Mr. Morel presents evidence that Barry Kimbrell, the supervisor who ultimately terminated Mr. Morel's employment, expressed frustration with the amount of medical leave that Mr. Morel took. Mr. Morel cites to the deposition of CMI safety supervisor Joe Brasfield:

> Q:     Did you ever hear any employees express any frustration with the amount of work Mr. Morel missed?
>
> A:     Yes.
>
> . . .
>
> Q:     Do you recall any specific statements either Mr. Richardson, Mr. Sullivan, Mr. Kimbrell, or Mr. Hewitt made?
>
> A:     About the closest I can recall is Mr. Sullivan asking why we're not able to provide him with safety coverage on his shift.
>
> Q:     Anything else?
>
> A:     That was the general comments of all; just displeasure, loss of safety coverage, no one there to be able to provide assistance and support if an issue did come up on the times that Mr. Morel was gone.

(Doc. 21-7, pp. 25, 27). Without pointing to a specific remark, Mr. Morel relies on general testimony that Mr. Kimbrell and several others expressed frustration with the amount of work that Mr. Morel missed. Mr. Morel has not presented evidence that these general comments were related to his termination. These general comments are not sufficient to establish pretext. *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002) ("Although a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext." (internal citation omitted) (emphasis in the original)).

Finally, Mr. Morel points to an interrogatory response in which CMI stated that Mr. Morel's termination was part of an overall reduction in force. (Doc. 24, p.

9

23; Doc. 25-5, p. 16). Shifting and inconsistent reasons for a termination decision can provide evidence of pretext. *See Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 Fed. Appx. 886, 889 (11th Cir. 2013). However, "the fact that the employer offers an additional reason for the employment decision does not suggest pretext if both of the employer's reasons are consistent." *Ritchie v. Indus. Steel., Inc.*, 426 Fed. Appx. 867, 872 (11th Cir. 2011). CMI consistently has stated that it terminated Mr. Morel for submitting a false expense report after he received two consecutive poor performance reviews. CMI's interrogatory response is consistent with this explanation:

> Q: Please state the reason(s) for Plaintiff[']s termination.
>
> A: Plaintiff submitted an improper expense report after multiple poor employment evaluations. He was also part of an overall reduction in force at NRM. After learning that he would be reduced, he made the decision to retire.

(Doc. 25-5, p. 16). CMI's explanation that Mr. Morel's termination was part of a reduction in force is consistent with its primary reasons for terminating Mr. Morel's employment. Therefore, CMI's interrogatory response is not evidence of pretext.

In sum, even if Mr. Morel had taken FMLA leave, his FMLA retaliation claim fails because he has not presented sufficient evidence to permit a reasonable trier of fact to conclude that CMI's proffered reasons for terminating his employment are pretext for retaliation based on his medical leave. Therefore, the

Court will enter judgment as a matter of law in favor of CMI on Mr. Morel's FMLA retaliation claim.

## III.  CONCLUSION

For the reasons stated above, the Court **GRANTS** CMI's motion for summary judgment on Mr. Morel's FMLA interference and retaliation claims. The Court will enter a separate final judgment consistent with the Court's initial memorandum opinion and this supplemental memorandum opinion.

**DONE** and **ORDERED** this June 17, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE